PER CURIAM.
This is an appeal from an order of suppression, holding improper a search by police of appellee’s luggage while appellee was a passenger on a bus temporarily stopped in Fort Lauderdale. We find there is competent substantial evidence to support the trial court’s factual findings and find no error by the trial court in its application of the law. We affirm and approve the reasoning of the trial court:
This Court finds that under the facts of this specific case the defendant was detained and “seized” by the detectives, and further, that the police had no reasonable articulable suspicion that a crime had been, or was being committed. The detainment was therefore unlawful. United States v. Cortez, 449 U.S. 411, 418 (1981) [United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)]; United States v. Sokolow, 109 S.Ct. 1581 (1989) [United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) ]; Article 1, § 12, Florida Constitution; Norman v. State, 379 So.2d 643 (Fla.1980).
Next on the bus, Det. Katz inquired whether Marcus had anything below the bus to which Marcus replied, “No, I don’t.” Detective Katz also asked “How many bags do you have?”, to which Marcus replied, “Two”. Detective Katz then moved toward the front of the bus blocking the aisle, as Det. Trawinski moved forward beside Marcus and continued the questioning. Det. Katz meanwhile pulled a bag off the overhead rack, saying to Trawinski and Marcus, “Nobody claimed this.” Marcus immediately stated, “That is my bag.” Det. Trawinski then asked whether he could “check” the bag, took the bag from Det. Katz, and placed it directly on Marcus’ lap. Det. Trawinski said, “Could you unlock the bag for us please?” Marcus, feeling he had no choice at this point other than to obey the officers, removed a key from his pocket, unlocked the bag and Det. Trawinski opened it up.
During this sequence, Marcus did not feel that he was free to leave, nor did he believe he could refuse the officer’s command. After the search of the bag, Marcus was arrested and handcuffed on the bus.
Based on the totality of the circumstances, voluntary consent was never obtained by the detectives to search Marcus’ bag. In fact, Marcus’s (sic) actions were in acquiescence to the apparent authority of the officers. Bumper v. North Carolina, 391 U.S. 543 (1968) [Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968)]; Schneckloth v. Bustamonte, 412 U.S. 218 (1973) [Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)]; Florida v. Royer, 460 U.S. 544, rehearing denied, 448 U.S. *276 908 (1980) [Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) ]; Denehy v. State, 400 So.2d 1216 (Fla.1980).
This Court further finds that there was no sufficient proof of “an unequivocal break in the chain of illegality” to dissipate the taint of the initial unlawful seizure, even if consent had been obtained. Norman v. State, 379 So.2d 643 (Fla.1980); Alvarez v. State, 515 So.2d 286 (Fla. 4th DCA 1987); State v. Martin, 532 So.2d 95 (Fla. 4th DCA 1988). It is this Court’s finding that the entire sequence of events was highly intimidating and coercive to Marcus Richardson.
This Court finds that the defendant was . unlawfully seized and that no break in the chain of illegality ever occurred prior to Marcus Richardson’s arrest. Further, no voluntary consent was ever obtained. The defendant did not feel free to leave and simply answered all questions and obeyed all the commands directed to him, in respect and acquiescence to their authority as police officers. Bostick v. State, 14 FLW 586 (Fla.1989) [Bostick v. State, 554 So.2d 1153 (Fla.1989)].
ANSTEAD, GLICKSTEIN and STONE, JJ., concur.